UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Carla Marie McClora, | ) | Civil Action  No. 5:14-0441-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.).  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act").  The issues before the court are whether the decision is supported by substantial evidence, and whether the Commissioner's decision contains an error of law.  For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings as discussed below.

I.   Relevant Background

    A.  Procedural History

On May 24, 2010, Plaintiff filed an application for DIB, and on June 29, 2010, Plaintiff filed an application for SSI.[1] Tr. 120-26. In both applications Plaintiff alleged a disability onset date of October 7, 2007. *Id.* After being denied both initially and on reconsideration, Tr. 59-65, on September 6, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 81-83. On October 23, 2012, the ALJ conducted a hearing, taking testimony from Plaintiff and a vocational expert ("VE"). Tr. 32-58. The ALJ issued a decision on November 23, 2012, denying Plaintiff's claims. Tr. 14-28. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on February 20, 2014. ECF No. 1.

B. Plaintiff's Background

Plaintiff, born on July 16, 1960, was 47 years old as of her alleged onset date of October 7, 2007. Tr. 120. She completed three years of college and did not complete any specialized job training or vocational school. Tr. 134-35. Plaintiff's prior work history includes work as a realtor at a real estate company, as a loan officer and in sales at a mortgage company, and as clerk and as a manager for a contractor. Tr. 135. Plaintiff alleged that her ability to work is limited by traumatic brain injury, migraines, severe TMJ,[2] and uterine adhesions. Tr. 134. Plaintiff served in the Army from September 18, 1979 to November 30, 2009. Tr. 140. In a Rating Decision dated March 4, 2010, Plaintiff received a 100% disability rating from the Department of Veterans Affairs ("VA") with rating evaluations for TMJ at 40%, uterine adhesions at 30%, cesarean

---

[1] Although the application summaries indicate application filing and completion dates of May 24 and June 29, 2010, as noted on the Disability Determination and Transmittal Forms, Plaintiff's protective filing date was May 20, 2010. Tr. 59, 61.

[2] Problems with your jaw and the muscles in your face that control it are known as temporomandibular disorders (TMD). It is sometimes wrongly called TMJ, after the joint. *See* http://www.webmd.com/oral-health/guide/temporomandibular-disorders-tmd (last visited May 13, 2015).

section scar at 10%, paralysis of left inferior alveolar nerve of the lip at 10%, right knee and left knee patellofemoral pain syndrome at 10%. Tr. 140-41. The VA denied an earlier entitlement to benefits that was based on traumatic brain injury and migraine headaches. Tr. 141.

    C.  The Administrative Hearing

        1.  Plaintiff's Testimony

Plaintiff, her counsel, and a VE appeared at her administrative hearing on October 23, 2012. *See* Tr. 32-58. Plaintiff testified that she was 52 years old and had one son who was 31 years old. Tr. 36. Plaintiff stated she was divorced, lived alone in an apartment, and received disability as a military veteran. Tr. 36-37. Plaintiff stated that she had a driver's license and drove a few times a month. Tr. 37. Plaintiff stated she completed three years of college but did not get a degree, and she had no other kind of vocational training. Tr. 37-38. Plaintiff testified that she was in the Army for 14 years and worked in supply. Her last three years in the military she was a drill sergeant at Fort Jackson. Tr. 38. The ALJ questioned Plaintiff about her employment history. *See* Tr. 38-41. Plaintiff testified she worked as a medical claims adjuster for Thomas H. Cooper & Co., as a bartender for TGS Club, Inc., as a sales manager for Fantasy Homes, Inc. of Lexington, and as a sales manager for Southern Showcase Housing, Inc. Tr. 38-39. Plaintiff stated that she was temporarily employed with Defender Services through Snelling Employment, LLC and worked in corporate finance and payroll. Tr. 39. Defender Services later hired Plaintiff to a permanent position as plant manager from January 2004 to October 2007. Tr. 40. In that position she supervised over 100 employees and handled "all the hiring and firing, job training to make sure that workman's comp and everything pertaining to each individual was done." Tr. 41. The ALJ reviewed Plaintiff's medication list in the record as Exhibits 17-E and 21-E. *Id.* Plaintiff confirmed that she started taking Gabapentin in 2010, Triazadone HCL in

2011, Cymitratan (sic) for migraines in 2011, and high blood pressure medication in 2012.[3] Tr. 42.

When the ALJ asked Plaintiff what time she got up in the morning, Plaintiff replied that 3-4 times a week she does not get up and she stays in bed all day. Tr. 42. On other days she gets up "around 11:00" and then she will "[w]ash up, get back in the bed, and watch a little TV." *Id.* Plaintiff stated she does her own household chores, but she did not have a set time and because she lived alone she did not "really dirty anything up." Tr. 43. Plaintiff stated she did laundry once a week, and went grocery shopping "[o]n the first" and someone else went with her. *Id.* Plaintiff stated she uses a push cart when she shops. Tr. 44. Plaintiff testified that she does not attend church, she has no family or friends whom she visits, and she has no pets. *Id.* Plaintiff stated she sometimes cooks, and one-to-two times a week a young lady she calls her daughter brings her something to eat. *Id.*

In response to questions from her counsel Plaintiff testified that she lived in a one-bedroom apartment but before that she lived in a house. Tr. 45. She stated that after her son left she was unable to take care of the house and it was too big. *Id.* Plaintiff testified that she stopped working at Defender Services because she used to have a lot of pain that caused her to miss a lot of work. *Id.* Plaintiff stated that the pain was from migraine headaches that occurred three-to-four times a week and sometimes every day. *Id.* She also testified that she had "had a lot of back pain from the walking into [her] knees." *Id.* Plaintiff stated the headaches started occurring every

---

[3] Exhibit 17-E lists the following medications: Gabapentin 100 mg, first prescribed in 2010 for pain; Norethindrone 0.35 mg, first prescribed in 1997 for birth control and to control bleeding; Omeprazole 40 mg, first prescribed in 2009 for acid reflux; Tramadol HCL 50 mg, first prescribed in 2003 for pain; Tizanidine HCL 4 mg, first prescribed in 2011 for muscle spasms; Sumatriptan Succinate 100 mg, first prescribed in 2011 for migraines; and Trotronolol 80 mg, first prescribed in 2012 for high blood pressure. Tr. 226. Exhibit 21-E refers to the medication Promethazine 25 mg, first prescribed in 2010 for nausea that was omitted from the prior medication form. Tr. 231.

day in the "past couple of months." Tr. 46. Plaintiff described the symptoms as a "throbbing pain." *Id.* She stated that light bothered her and she can "get real nauseated." *Id.* Plaintiff stated she takes medication and lies down in the dark and her "whole day is gone." *Id.* Plaintiff stated there was "no set time" when the headaches started and that lately she had "been waking up with them every day." Tr. 47. Plaintiff testified that if the medication worked she would wake up four-to-five hours later, but if she took the nausea medication it sedated her and she could sleep "almost eight hours." *Id.* Plaintiff stated she had nausea-causing migraines two-to-three times a week. *Id.* Plaintiff testified she was sensitive to light even when she was not having a migraine and sometimes bright light could bring on a migraine. *Id.* Plaintiff stated she was having migraine headaches three-to-four times a week when she worked for Defender Services. Tr. 48. Plaintiff testified that the pain related to standing and walking was due to crepitus in her knees, and a dislocated disc in her back. *Id.* Plaintiff stated she could probably stand and walk about 15-20 minutes. *Id.* Plaintiff stated she could sit comfortably in a chair for about 30-40 minutes before it became uncomfortable and she would get spasms in her lower back. Tr. 49. Plaintiff stated she could lift or carry 10 pounds comfortably. *Id.* Plaintiff testified that after standing or walking 15-20 minutes she would sit for about 10 minutes. She then could stand for another 15-20 minutes. *Id.* Plaintiff stated she was "only up that long when [she went] grocery shopping." *Id.* She stated that after a grocery trip she did not feel well and would have to lie down all day. Tr. 50. Plaintiff testified that she was diagnosed with a brain injury after her ex-husband battered her by hitting her in the face with a gun 20 years ago. *Id.* As a result Plaintiff also suffers from intermittent jaw pain that worsens if she opens her mouth "wide or anything that causes the side to click." *Id.* Because of that incident Plaintiff has a diagnosis of PTSD. Tr. 51. Plaintiff testified that she spent most of her day at home because she did not want anyone to see her in her

condition. *Id.* Plaintiff stated that when she is having a migraine headache she has to turn off the TV or radio and keep the room dark. *Id.*

2.  VE's Testimony

VE Thomas C. Neil characterized Plaintiff's past work for the last 15 years as follows: "Medical claims adjuster, 241.362-010, sedentary, SVP-4, semi-skilled. Sales manager/mobile home, 250.357-018, light, SVP-5, semi-skilled. Payroll clerk, 216.482-010, sedentary, SVP-5, semi-skilled. Contract manager/plant, 183.117-014, light, medium as performed, SVP-8." Tr. 52-53. The VE testified that none of those jobs generated skills that were readily transferable to skilled or semi-skilled work. Tr. 53. The ALJ posed the following hypothetical:

> Please assume an individual the same age, education and work experience as the claimant of degenerative disk disease, back pain, migraines, depression and PTSD with the following limitations. Lift/carry 20 pounds occasionally, 10 frequently. Sit/stand/walk six hours in an eight-hour workday. Never climb ladders, ropes, scaffolds. Occasional ramps, stairs, balancing, stooping, kneeling, crouching, crawling, interaction with the public. Unskilled work and/or routine repetitive tasks.

Tr. 53. The ALJ asked if such an individual could perform Plaintiff's past work and the VE responded in the negative. *Id.* The VE testified there would be a reduced range of work based on the limitations and provided the examples of "[c]leaner/maid in commercial establishments in non-working hours, 323.687-014, light, SVP-2, unskilled, state 1,000, nationally 110,000. Laundry garment bagger, 920.687-018, light, SVP-1, unskilled, state 650, nationally 21,000." Tr. 53-54.

The ALJ posed a second hypothetical as follows:

> Please assume a hypothetical individual of the same age, education and work experience as the claimant with the following limitations. Lift/carry 10 pounds occasionally, less than 10 frequently. Stand/walk two hours in an eight-hour workday. Sit about six hours in an eight-hour workday. Never climb ladders, ropes, scaffolds. Occasional ramps, stairs, balancing, stooping, kneeling,

crouching, crawling, interaction with the public. Unskilled work and/or routine
repetitive tasks.

Tr. 54. The VE reported that such an individual would be unable to do the past work of Plaintiff

but identified the following work available in the local or national economy: "Addressing clerk

using a machine to process packages, advertising literature, etcetera, 209.587-010, sedentary,

SVP-2, unskilled, state 950, [nationally] 18, 000. Waiter (sic) sample tester, 539.485-010,

sedentary, SVP-2, unskilled, state 675, nationally 21,000." Tr. 54-55.

The ALJ's third hypothetical asked the VE to assume an individual the same age,

education and work experience as the individual in hypothetical number one with the following

limitations:

Lift/carry 10 pounds occasionally, less than 10 frequently. Stand/walk less than
two hours in an eight-hour workday. Sit about less than six hours in an eight-hour
workday. Never climb ladders, ropes, scaffolds. Occasional ramps, stairs,
balancing, stooping, kneeling, crouching, crawling, interaction with the public.
Unskilled work and/or routine repetitive tasks. Cannot complete an eight-hour
workday based on pain.

Tr. 55. The VE testified that such an individual would be unable to do Plaintiff's past work and

no work would be available as "the individual would not be able to meet performance standards

as normally expected." *Id.*

The ALJ's fourth hypothetical asked the VE to assume an individual of the same age,

education and work experience as in hypothetical number one "except that this individual is

limited as stated in claimant's testimony considering all testimony to be credible." Tr. 55. The

VE responded that this individual would be unable to do the past work of Plaintiff and no work

was available. *Id.*

Plaintiff's attorney questioned the VE regarding his testimony as to hypothetical number

four and asked if there would be an impact on the individual's ability to work at any exertional

level if the "hypothetical individual would be missing approximately one day a week and it would be an unscheduled absence because of impairment." Tr. 56. The VE responded that the individual "would not be meeting performance standards and that would not be acceptable at any exertional or skill level." *Id.*

## II. Discussion

### A. The ALJ's Findings

In her November 23, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since October 7, 2007, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, back pain, migraine headaches, depression and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasional interaction with public; lifting and/or carrying no more than 20 pounds occasionally, 10 pounds frequently; standing and/or walking about 6 hours in an 8-hour day; sitting about 6 hours in an 8-hour day; occasional balancing, stooping, kneeling, crouching, crawling or climbing ramps or stairs; with no climbing of ladders, ropes or scaffolds.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 16, 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR-82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 7, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 19-27.

B.  Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that

decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### C. Analysis

Plaintiff sets forth the following seven allegations of errors: (1) the ALJ erred in concluding that her TMJ was a non-severe impairment; (2) the ALJ erred in failing to conclude that Plaintiff's degenerative joint disease of her knees was a severe impairment; (3) the ALJ failed to attribute functional limitations of missed work because of migraine headaches; (4) the ALJ engaged in "sit and squirm" jurisprudence in her credibility determination; (5) the ALJ misstated Plaintiff testimony to justify her finding related to Plaintiff's mental functioning; (6) the ALJ failed to properly evaluate Plaintiff's subjective allegations of pain and limitations arising from her severe impairments; and (7) the ALJ failed to engage in the appropriate analysis under *Bird v. Commissioner of Social Security*.[5] Pl's Br. 5, ECF No. 9.

### 1. ALJ's Findings Regarding Severity of Impairments

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A non-severe impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. §§ 404.1508, 416.908. It is the claimant's burden to prove that she suffers from a medically-severe impairment. *Bowen v. Yuckert*, 482 U.S. at 146 n.5.

---

[5] 699 F.3d 337 (4th Cir. 2012).

a.  TMJ Disorder

Plaintiff asserts that the ALJ erred in concluding her TMJ disorder was a non-severe impairment because as a result of her jaw deformity, pain, and numbness she "has communication difficulties that more than minimally impact her ability to perform work-related activities." Pl.'s Br. 8. The Commissioner argues that substantial evidence supports the ALJ's finding that her TMJ syndrome was not a severe impairment and that any "omission of an impairment at step two is harmless if the ALJ resolves that step in the claimant's favor and considers any limitations from that impairment at the subsequent steps in the sequential evaluation." Def.'s Br. 15, ECF No. 10.

In her determination that Plaintiff's TMJ was a non-severe impairment the ALJ reasoned that it did not "result in functional limitations or restrictions having more than a minimal effect on the claimant's ability to perform basic work activities." Tr. 19-20. At step four the ALJ notes the VA's diagnosis of TMJ syndrome and 40% disability rating and the "history of TMJ" diagnosis made by Dr. Thomas Motycka[6] in October 2010. Tr. 22. The ALJ also referenced the complex fracture of Plaintiff's jaw that occurred at the hands of her ex-husband that required six operations in 1986 "with resultant jaw deformity with limitation of movement." Tr. 23.[7]

---

[6] Thomas J. Motycka, M.D. completed a Comprehensive Examination of Plaintiff on October 27, 2010. Tr. 516-19. Dr. Motycka assessed Plaintiff with low-back pain, history of migraines, bilateral knee pain, neck pain, history of temporomandibular joint syndrome, and history of menometrorrhagia. Tr. 519.

[7] The undersigned notes that after recovering from her surgeries Plaintiff returned to active duty and retired from the military as a drill sergeant in January 1991 and continued working until October 2007. Tr. 159-66. There is no indication in the medical records to establish any significant worsening of this condition after that time. *Collier v. Colvin*, No. 9:13-cv-3323-DCN, 2015 WL 1519796, at *13 (D.S.C. Mar. 30, 2015) (citing *Orrick v. Sullivan*, 966 F.2d 368, 370 (8th Cir. 1992) (absent showing of significant worsening of condition, ability to work with impairment detracts from finding of disability); *Cauthen v. Finch*, 426 F.2d 891, 892 (4th Cir. 1972) (finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration)).

To support her allegation regarding severity of her TMJ impairment Plaintiff points to the examination of Dr. Raybourne that indicated Plaintiff was "unable to open her mouth more than 1 and ½ inches; that the obvious jaw deformity causes her pain; and that damage to the mental nerve causes numbness." Pl.'s Br. 8 (citing Tr. 256). Dr. Susan R. Raybourne examined Plaintiff in a neurology consult on January 28, 2008. Tr. 256. Dr. Raybourne noted the following regarding Plaintiff's medical history:

> This is a 47-year-old woman who had a complex fracture of her jaw in 1986. It was fractured in three places, requiring six operations, all done in 1986. She was left with jaw deformity and a patch of numbness in the left chin. She has been unable to open her mouth fully. She has to drink through a straw because liquids dribble out of the left side of her mouth. She has not had any imaging studies nor seen an oral surgeon since the 1980s. She can chew some foods. She states she cannot chew hard foods such as potato chips and corn chips, but she can chew chicken and tender steak.

*Id.* Upon examination Dr. Raybourne noted that Plaintiff's maximum jaw opening was about 1-1/2 inches and she had "sensory loss in the distribution of the left mental nerve." *Id.* She also noted "some atrophy of the masseter muscles bilaterally, slightly more on the left than on the right, and some slight weakness of the left masseter as well. There is obvious jaw deformity." *Id.* Dr. Raybourne recommended that after a CT scan Plaintiff "be referred to Oral Surgery as the temporomandibular joint dysfunction and the jaw deformity are the major cause of her dysfunction." *Id.* Plaintiff had a CT facial scan on February 4, 2008 that noted "TMJ are normal." Tr. 239.

Plaintiff was seen by Dr. Dai C. Phan, a dentist, on December 15, 2009, for an extensive oral evaluation. Tr. 451. Plaintiff complained of "increasing limited opening and joints clicking" and reported her "symptoms 'come and go' over the year." *Id.* On the day of the exam Plaintiff did not report any discomforts. Dr. Phan advised Plaintiff "to apply moist heat pads to the joints when symptoms are noted and to use cold pads under acute pain." *Id.* Plaintiff was instructed to

14

return in one month for follow up. *Id.* Plaintiff was a "no show" for her scheduled follow-up visit on January 19, 2010. Tr. 449.

Plaintiff asserts the ALJ "failed to give any weight to this medical evidence, and also failed to give any reasons why she would disregard such evidence with respect to the severity of Plaintiff's TMJ." Pl.'s Br. 9. The regulations provide that if the medical evidence is "consistent and there is sufficient evidence . . . to determine whether [the claimant is] disabled, [the Commissioner] will make [her] determination or decision based on that evidence." 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If the evidence is inconsistent, the Commissioner "will weigh the relevant evidence and see whether [she] can determine whether [the claimant is] disabled based on the evidence [she has]." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Here the ALJ noted that she considered the entire record and she referenced the VA records, which included the report of Dr. Raybourne. Tr. 22. The ALJ did not indicate any inconsistencies in the medical evidence related to Plaintiff's diagnosis of TMJ. She also noted that "[n]one of the claimant's treating or examining physicians have offered any opinion regarding disability." Tr. 25.

The regulations provide that it is Plaintiff's burden to show the severity of her impairments. *See Bowen v. Yuckert*, 482 U.S. at 146 ("The severity regulation requires the claimant to show that he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'")(citing 20 CFR §§ 404.1520(c), 404.1521(b) (1986)).  None of Plaintiff's medical records or medical opinions indicates Plaintiff had communication limitations that would impact her ability to perform basic work activities.[8] Accordingly, the ALJ's finding that Plaintiff's TMJ is not a severe impairment is supported by substantial evidence in the record as discussed above.

---

[8] As noted by Plaintiff, the ALJ commented at the administrative hearing that Plaintiff was "not really opening [her] jaw that much," Pl.'s Br. 8 n.2 (citing Tr. 50); however, the ALJ did not indicate any difficulty in understanding Plaintiff.

b. Degenerative Joint Disease of Knees

Plaintiff also maintains that her "bilateral knee pain should have been considered a severe impairment." Pl.'s Br. 9. Plaintiff points to Dr. Motycka's assessment of bilateral knee pain and her own testimony of knee pain and asserts that "the bilateral knee pain results in, at best, the ability to perform sedentary work, requiring a finding of disability" pursuant to the Medical-Vocational Guidelines. Pl.'s Br. 9. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff's degenerative joint disease of her knees was not a severe impairment. Def.'s Br. 17.

Whether Plaintiff suffers from knee pain is not at issue. Rather, whether this condition is a severe impairment that impacts Plaintiff's ability to work is at issue. *See Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (quotation omitted) (emphasis in original) (finding an impairment is not severe "only if it is a *slight* abnormality which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."). Moreover, the regulations require that the severity of the impairment be established by "medically acceptable clinical and laboratory diagnostic techniques" rather than only by a statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908. Here, the medical records presented to the ALJ do not establish that this impairment affects Plaintiff's ability to work or, in other words, is "severe." No medical reports indicate Plaintiff's condition severely impacts her ability to work.

As discussed above, it is Plaintiff's burden to show that an impairment is severe and that burden has not been met as to Plaintiff's bilateral knee pain. In support of her assertion that the ALJ minimized her knee impairment, Plaintiff cites to three pieces of evidence without elaboration. The first is a 2007 x-ray that found a "small joint effusion in the suprapetellar bursa"

of Plaintiff's right knee; the second is Dr. Motycka's conclusion that Plaintiff had bilateral knee pain; and the third is Plaintiff's testimony that her knee pain is exacerbated when walking. Pl.'s Br. 9. In her decision the ALJ noted Plaintiff's allegations of knee pain, her 10% VA disability rating in her right and left knee for patellofemoral pain syndrome, and Dr. Motycka's diagnosis of bilateral knee pain. Tr. 22.  The ALJ further noted that Dr. Motycka found Plaintiff had "no gait disturbance and did not use any assistive devices for ambulation" and although an x-ray of Plaintiff's right knee "showed some loss of joint space in lateral compartment, [it] was otherwise unremarkable" and showed "no significant abnormalities, gait disturbance, spasms, atrophy or crepitis (sic) in knee joints." Tr. 22, 25. The ALJ also noted that the "record does not indicate a specific injury to her back or knees, she has had no back or knee surgery or any other orthopedic treatment for her back or knees."  Tr. 24.

The court again notes the absence of objective medical evidence demonstrating the severity of Plaintiff's knee pain and the medical evidence reviewed by the ALJ indicating that Plaintiff's knee pain would not interfere with Plaintiff's ability to work. In order to prevail on this argument, Plaintiff must demonstrate that the alleged disorder significantly limited her ability to perform basic work activities, which she has not done. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a). Her allegation of error fails.

### 2. Functional Limitations Due to Migraine Headaches

Plaintiff asserts that although the ALJ properly concluded her migraine headaches were a severe impairment, she failed to consider the functional limitations that their severity would have on her ability to maintain employment. Pl.'s Br. 10. Plaintiff cites to medical records indicating she was prescribed anti-nausea medication that causes sedation and references to severe migraine headaches multiple times per week. *Id.* Plaintiff contends the ALJ disregarded the VE's response

to Plaintiff's hypothetical that missing one day of work per would be unacceptable job performance at any exertional or skill level. *Id.* at 11. The Commissioner argues that substantial evidence supports the ALJ's RFC assessment that Plaintiff was capable of a reduced range of light work. Def.'s Br. 19.

After finding that Plaintiff's migraine headaches were severe impairments, in her discussion of Plaintiff's RFC, the ALJ considered the record evidence related to Plaintiff's migraines. She noted that Plaintiff "testified she has migraine headaches 3-4 times weekly" and "reported she experiences nausea/vomiting and light sensitivity with migraine headaches." Tr. 22. The ALJ further noted that Plaintiff "testified she takes several prescription pain medications, which do offer some relief." *Id.* The ALJ referenced Plaintiff's diagnosis from the VA of chronic migraine headaches and her VA 40% disability rating for post traumatic headache. *Id.* The ALJ noted Dr. Motycka's diagnosis of "history of migraines since facial trauma in 1986" and Dr. Motycka's notation that although Plaintiff "reported sensitivity to light as a trigger for her migraines . . . she stated she forgot her sunglasses, and walked through the parking lot, which was bathed in bright sunlight." *Id.* The ALJ noted Plaintiff's August 2010 Function Report-Adult in which Plaintiff indicated she had problems with blurred vision due to migraines, and a September 2010 Report of Contact in which "[s]he indicated she has migraines 3-4 times weekly, noting she must lie down in a quiet dark room and take medications for relief." Tr. 24. The ALJ again referred to Plaintiff's testimony that "she experiences migraine headaches occurring 3-4 times per week" and that Plaintiff reported continuous pain despite taking prescription pain medications. *Id.* The ALJ found that Plaintiff's "impairment does cause some work-related restriction, but does not prevent her from performing all types of work." Tr. 23. Citing to Plaintiff's hypothetical to the VE regarding missing one day per week due to

impairments, the ALJ found "these limitations are unsubstantiated by the medical evidence of record and are not valid." Tr. 27.

The Commissioner does not dispute that the medical evidence supports the alleged frequency of Plaintiff's migraines. Instead she notes that "none of Plaintiff's treating physicians opined that Plaintiff had functional limitations as a result of her migraines." Def.'s Br. 20. However, the reality is that none of Plaintiff's treating physicians provided any type of opinion regarding disability. Tr. 25. The only physician opinions the ALJ discusses are those of consulting physicians Dr. Motycka and Dr. Taylor,[9] and the reports of state agency medical consultants. *Id.* Given that the record supports the alleged frequency of Plaintiff's migraine headaches and the sedative effect of her prescribed medications, the undersigned is unable to determine how the ALJ reached the conclusion that the limitation proposed to the VE is "unsubstantiated by the medical evidence of record" and invalid. *See* Tr. 27. Accordingly, this allegation of error should be remanded so that the ALJ can revisit her RFC assessment including any functional limitations supported by the medical evidence of record related to Plaintiff's migraine headaches.

### 3.     ALJ's Credibility Determination

Plaintiff alleges the ALJ erred by engaging in "'sit and squirm' jurisprudence in her credibility determination, misstated Plaintiff's testimony to justify her decision regarding Plaintiff's mental functioning, and improperly evaluated Plaintiff's subjective allegations of pain and limitations. Pl.'s Br. 11-14. The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility. Def.'s Br. 21.

---

[9] Cherilyn Y. Taylor, Ph.D. conducted a consultative mental status evaluation of Plaintiff on July 9, 2011. Tr. 578-81. Dr. Taylor opined that Plaintiff was "capable of performing minimally in employment settings due to the frequency with which she reports experiencing migraines as well as other physical challenges." Tr. 581.

SSR 96–7p requires that, prior to considering Plaintiff's subjective complaints the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96–7p; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996). The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If she rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p; *see Mickles v. Shalala*, 29 F.3d 918, 927 (4th Cir. 1994) ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent

to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . .").

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig*, 76 F.3d at 591-96. The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 23. The ALJ went on to provide numerous reasons for discounting Plaintiff's credibility including Plaintiff's August 2010 and July 2011 Function Reports describing daily activities such as preparing her own meals, and doing housework, laundry and chores with breaks. *Id.* The ALJ also referred to a September 2010 Report of Contact in which Plaintiff "indicated she is able to rise from a seated position without assistance, can walk ½ block, continues to drive and does not require[] special accommodations. She is able to climb eight steps without assistance and shop, bank, etc., without use of a motorized cart or wheelchair. She uses no type of assistive devices for ambulation." Tr. 24. The ALJ determined:

> The evidence shows that the claimant is able to care for her own personal needs and handling her own financial and legal affairs. The claimant's described daily activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities, constriction of interests, or impaired social functioning. During the hearing, the claimant sat without any visible signs of discomfort, she entered and exited the courtroom without any problems and answered all questions clearly and coherently. She used no orthotic, prosthetic or assistive devices for ambulation.

Tr. 24. The ALJ also discussed Plaintiff's medical records, diagnostic studies, reports and opinions of agency physicians and consultants, and the VA's disability determinations. Tr. 25. The ALJ concluded that her RFC assessment was "an accurate reflection of the claimant's residual functional capacity." *Id.*

Plaintiff argues that the ALJ engaged in "sit and squirm" jurisprudence because she did not discuss in her decision Plaintiff's request to wear sunglasses during the administrative hearing. Pl.'s Br. 12. The undersigned disagrees. As an initial matter, "an ALJ is not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *Williamson v. Colvin*, C/A No. 8:12-2887-JFA-JDA, 2014 WL 1094404, at *13 (D.S.C. Mar. 18, 2014) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole); *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004) ("[T]he ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it."); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted.")). Furthermore, pursuant to SSR 96-7p, when a claimant attends a hearing before an ALJ, the ALJ may "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96–7p, 1996 WL 374186, at *5. The ALJ in this case did not rely solely on her observations of Plaintiff in discounting her credibility. Instead, as is permitted by SSR 96–7p, it was one factor of many. The undersigned recommends a finding that the ALJ's consideration of her observations of Plaintiff at the hearing was not in error.

Plaintiff next argues that the ALJ's statement that Plaintiff's "activities of daily living [ADL's] were fairly intact" was "factually inaccurate" because her testimony did not

demonstrate fairly intact ADLs. Pl.'s Br. 12. To the extent Plaintiff argues that the ALJ used the "fairly intact" statement to justify Plaintiff's mental functioning, the undersigned disagrees. The ALJ made the statement regarding Plaintiff's ADLs in making her credibility determination after thoroughly discussing Plaintiff's own reports regarding her functionality and daily activities and Plaintiff's hearing testimony. The ALJ's complete statement is as follows:

> The claimant testified she is able to take care of her own personal needs including bathing, grooming, dressing and feeding herself. She lives alone, cooks, cleans, drives, shops, pays bills, manages money and takes care of her own personal needs and [ADLs]. *She handles her own financial and legal affairs, her [ADLs] were fairly intact, and she had no impairments that imposed severe limitations in functioning.* She testified she spends the majority of the day watching television.

Tr. 24 (emphasis added). In considering Plaintiff's mental impairments at Step Three of the sequential evaluation process, the ALJ noted that Plaintiff had mild restriction in restriction in ADLs; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation. Tr. 20. Accordingly, the ALJ found that because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied" and therefore Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 or 12.06. Plaintiff does not dispute this finding. The ALJ's decision to discount Plaintiff's credibility was based not only on Plaintiff's reported ADLs, but also on many of the factors identified in SSR 96-7p. The undersigned finds no error in the ALJ's consideration of Plaintiff's ADLs. *Id.* at 20, 21.

Plaintiff's final argument with regard to the ALJ's credibility analysis is that the ALJ "inexplicably chose to completely disregard the overwhelming evidence on the record that Plaintiff suffers debilitating pain which imposes severe functional limitations on her ability to perform any sort of work." Pl.'s Br. 14. However, Plaintiff has failed to demonstrate that the ALJ

did not properly apply the relevant factors in evaluating her subjective allegations of pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (providing that in evaluating subjective complaints, the Commissioner will consider the following relevant factors: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms").

The ALJ discussed Plaintiff's impairments, the medical evidence, and Plaintiff's subjective complaints of pain. *See* Tr. 22-24 (noting Plaintiff's allegations of chronic face pain, migraine headaches, knee pain, and back pain in conjunction with factors relative to evaluating her symptoms). It is the ALJ's duty to weigh credibility. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Here, the ALJ evaluated Plaintiff's allegations of pain in accordance with the two-step process outlined in *Craig* and 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

To the extent that Plaintiff argues that the ALJ only considered selective portions of the record and "cherry-picked" evidence that supported her decision, Pl.'s Reply Br. 3-4, ECF No. 11, upon review of the ALJ's decision and the record as whole, the undersigned disagrees. As discussed above, the ALJ need not specifically refer to every piece of evidence in her decision.

The ALJ's decision clearly reflects that she considered the relevant factors in weighing Plaintiff's credibility. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Therefore, the court finds that Plaintiff cannot demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); *Blalock*, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

4.    Analysis of VA Disability Rating

Finally Plaintiff argues that the ALJ's decision was made without consideration of the Fourth Circuit's decision in *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012). Pl.'s Br. 14. Plaintiff asserts that the *Bird* decision held that the Commissioner must give substantial weight to a VA disability rating. *Id.* Plaintiff argues that the ALJ's "lack of any meaningful analysis regarding the interplay between VA determinations and SSA determinations, coupled with [the ALJ's] failure to give substantial weight to the VA determination requires this case to be reversed and remanded." *Id.* at 15. The Commissioner argues that "the presence of a VA disability rating does not compel any particular result in an adjudication by an SSA ALJ." Def.'s Br. 24. The Commissioner further contends that the "ALJ's decision here comports with *Bird* because the ALJ explicitly considered the VA's disability

ratings, but determined that a deviation from those ratings was appropriate after a thorough review of the record evidence." *Id.*

In her decision the ALJ stated:

I have also considered the conclusion by the Veteran's Administration that the claimant is entitled to compensation for a combined service connected disability rating of 100% (Exhibits 2E and 16E). Those determinations have been considered, however, it is noted that the Veteran's Administration's order is based on percentages of disability tied to ratings or impairments, not whether claimant can perform past work or other substantial gainful activity despite those impairments, which is the issue directly before me. "Unemployability" for purposes of a VA Rating Decision does not equate to "disability" for Social Security purposes, as the programs are parallel with different rules and regulations. Such determinations made by other agencies are based on their own rules and are not binding on the Social Security Administration (20 CFR 404.1504).

Tr. 25.

In *Bird* the Fourth Circuit held that "in making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Bird*, 699 F.3d at 343. Here, the ALJ's decision does not indicate that she considered the *Bird* decision[10] or that she considered "substantial weight" to be the starting point for weight give to VA ratings. Furthermore, the discussion provided by the ALJ in her decision, does not "clearly demonstrate" that such a deviation from a finding of substantial weight is appropriate. Because it is recommended that this action be remanded for further clarification as to Plaintiff's RFC and her functional limitations related to migraine headaches,

---

[10] As noted by Plaintiff, the *Bird* case was decided November 9, 2012, and the ALJ's decision was made on November 23, 2012. Pl.'s Br. 14.

upon remand the ALJ also should evaluate Plaintiff's VA disability rating in light of the *Bird* decision.

### III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the ALJ's findings regarding Plaintiff's RFC and the weight given to the VA disability rating are supported by substantial evidence or are without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

IT IS SO RECOMMENDED.

May 13, 2015                              Kaymani D. West
Florence, South Carolina                  United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**